NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CU 0353

EARL JOSEPH GORIO, JR.

VERSUS

KARLA DANIELLE GORIO

Judgment Rendered: SEP 1 9 2025

********

The Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. F213914

The Honorable Kyle Russ, Judge Presiding

********

Mark D. Plaisance                          Counsel for Defendant/Appellant
Marcus J. Plaisance                        Karla Danielle Gorio
Prairieville, Louisiana

Travis J. Turner                           Counsel for Plaintiff/Appellee
Gonzales, Louisiana                        Earl Joseph Gorio, Jr.

********

BEFORE: LANIER, WOLFE, AND HESTER, JJ.

**LANIER, J.**

In this custody dispute, the mother challenges the trial court's July 30, 2024 judgment, which denied a motion to designate her domiciliary parent, or, in the alternative, grant her the authority to select a school for the minor children. For the reasons that follow, we affirm the trial court's judgment and issue this memorandum opinion in compliance with Uniform Rules–Courts of Appeal, Rule 2-16.1(B).

## BACKGROUND

According to the record, the parties, Earl Joseph Gorio, Jr. and Karla Danielle Gorio, were married in December 2009. Two children, AGG (DOB 1/8/13) and AIG (DOB 5/25/16) were born during the marriage. Earl filed a petition for divorce on June 13, 2018, after which the parties entered into a consent agreement. Thereafter, on July 10, 2018, the trial court signed a consent judgment whereby the parties were awarded joint shared custody of their two minor children. The judgment ordered that "there shall be no domiciliary designation with the decision-making authority governed by this judgment." Concerning the children's school, the judgment provided, "both parents are satisfied with the children's present educational plans ... [AGG] at [BASIS Charter School] in Baton Rouge, and [AIG] at ACS Montessori and then [BASIS] for kindergarten, and therefore agree that the minor children shall attend said schools as planned. The parties are obligated to consult and mutually agree on the choice of high school." The judgment further provided that in the event either party disagrees with the educational plan stated in the judgment, they "shall first submit to a parenting coordinator in an attempt to reach a resolution on that issue." The judgment also awarded use of various community property and contained other orders pertaining to the community assets and obligations.

In a consent judgment dated April 1, 2019, the parties' community property regime was terminated retroactive to June 13, 2018. Furthermore, in August 2019, the parties executed and filed a Partition of Community Property Agreement, which

2

voluntarily settled, partitioned, and liquidated the community of acquets and gains formerly existing between them. On November 4, 2019, the trial court signed an order, ruling that the Community Property Partition and Settlement was approved, homologated, and made a judgment of the court.

On July 12, 2022, Earl filed a "Rule for Contempt and Request to Appoint Parenting Coordinator," asserting Karla had enrolled the children at Red Stick Academy instead of BASIS. He later dismissed the rule, without prejudice, asserting they had reached an agreement.

Thereafter, on March 14, 2024, Karla filed a "Motion to Designate Domiciliary Parent." She noted that the children were currently enrolled in BASIS, where they struggle and face daily challenges with the school's programs. Karla asserted that despite having met with a parent coordinator in a good faith effort to resolve the issue, the parties had been unable to reach an agreement regarding school choice. Karla alleged that Earl was insistent that if there is to be a change in the children's school, it must be to a public school in Ascension Parish, where Earl resides—a condition that Karla maintained she could not fulfill as she resides in Baton Rouge. Thus, Karla requested that she be named domiciliary parent, or, in the alternative, that she be granted the authority to select a school for the minor children.

The matter proceeded to hearing on June 18, 2024. After hearing from the witnesses and considering the evidence, the trial court denied Karla's motion to designate a domiciliary parent and her request for authority to select a school for the minor children. The trial court also found Earl in contempt for having failed to comply with the right of first refusal as set forth in the July 10, 2018 consent judgment. The trial court fined Earl $250.00 and assessed him court costs and

attorney fees for the contempt portion.[1] The trial court signed a judgment in accordance with these findings on July 30, 2024.

From this judgment, Karla has appealed. On appeal, Karla asserts the trial court erred in: (1) not naming her as domiciliary parent or giving her decision-making authority over education when the facts demonstrate that the children suffer academic difficulties and emotional issues at BASIS; and (2) by failing to issue an implementation order or giving reasons for cause to the contrary after declining to name a domiciliary parent.

**DISCUSSION**

Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. See La. Civ. Code art. 131; **Leger v. Leger**, 2022-1113 (La. App. 1 Cir. 3/13/23), 363 So.3d 519, 528, writ denied, 2023-00512 (La. 6/26/23), 363 So.3d 1231. The best interest of the child standard governs all child custody determinations, including the determination of whether to modify the domiciliary parent designation. *Id.*

As provided in La. Civ. Code art. 134, all relevant factors in determining the best interest of the child must be considered by the court; such factors may include: (1) the love, affection, and other emotional ties between each party and the child; (2) the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; (3) the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs; (4) the length of time the child has lived in a stable, adequate environment and the desirability of maintaining continuity of that environment; (5) the permanence, as a family unit, of the existing or proposed

---

[1] Earl has neither appealed nor answered the appeal. Accordingly, this portion of the judgment regarding the finding of contempt against Earl is final.

4

custodial home or homes; (6) the moral fitness of each party, insofar as it affects the welfare of the child; (7) the mental and physical health of each party; (8) the home, school, and community history of the child; (9) the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference; (10) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; (11) the distance between the respective residences of the parties; and (12) the responsibility for the care and rearing of the child previously exercised by each party. **Hodges v. Hodges**, 2015-0585 (La. 11/23/15), 181 So.3d 700, 703. The list of factors provided in Article 134 is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. See La. Civ. Code art. 134, 1993 Revision Comment (b).

The trial court is in the best position to ascertain the best interest of the child given the unique circumstances of the particular case; thus, the trial court's custody determination is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. **Moore v. Prater**, 2021-1430 (La. App. 1 Cir. 6/3/22), 342 So.3d 994, 998. In making its determination, the trial court is not bound to make a mechanical evaluation of all statutory factors listed in Article 134, but should decide each case on its own facts and circumstances in light of Article 134 and all other relevant factors. **Underwood v. Underwood**, 2021-0277 (La. App. 1 Cir. 10/21/21), 332 So.3d 128, 140. One court has observed:

> In child custody cases where two parents are fervently competing for custody and domiciliary status of the children, frequently the trial court must determine the best interest of the children solely from the testimony of the parents and their respective relatives or friends. This naturally passionate and self-interested testimony is rarely objective, leaving it to the trial court, who is in the best position to view firsthand the demeanor and tone of the witnesses, to assess the credibility of the witnesses, and decide how much weight to give the testimony in light of the factors in La. C.C. art. 134. [Citation omitted.]

5

**Fuller v. Fuller**, 54,098 (La. App. 2 Cir. 7/21/21), 324 So.3d 1103, 1114, <u>writ denied</u>, 2021-01223 (La. 9/27/21), 324 So.3d 621.

Moreover, in most child custody cases, the trial court's determination is based heavily on factual findings. **Yepez v. Yepez**, 2021-0477 (La. App. 1 Cir. 12/22/21), 340 So.3d 36, 41. It is well settled that an appellate court cannot set aside a trial court's factual findings in the absence of manifest error or unless the findings are clearly wrong. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced it would have weighed the evidence differently. *Id.*

Where, as here, the underlying custody decree is a stipulated judgment and the parties have consented to a custodial arrangement with no evidence as to parental fitness, a party seeking a modification of that judgment must prove that: (1) there has been a change in circumstances materially affecting the welfare of the children since the original (or previous) custody decree was entered; and (2) the proposed modification is in the best interest of the children. **Leger**, 363 So.3d at 530. Accordingly, a party seeking modification of the domiciliary parent designated in a stipulated judgment must meet the two-prong test of proving that there has been a change in circumstances materially affecting the welfare of the children since the consent judgment, as well as proving that the proposed modification is in the best interest of the children. **Tinsley v. Tinsley**, 2016-0891 (La. App. 1 Cir. 1/18/17), 211 So.3d 405, 413. If the first prong of the test is not met and a change in circumstances materially affecting the children is not shown, the inquiry ends, and there is no basis for altering the custody decree. **Lunney v. Lunney**, 2011-1891 (La. App. 1 Cir. 2/10/12), 91 So.3d 350, 353, <u>writ denied</u>, 2012-0610 (La. 4/4/12), 85 So.3d 130.

The first issue to be resolved is whether Karla satisfied her burden of proving a change in circumstances materially affecting the welfare of the children and proving that the proposed modification of the July 10, 2018 consent judgment, *i.e.*, that she be designated as the domiciliary parent or, in the alternative, be granted the decision-making authority over education, would be in the best interest of the children. See **Tinsley**, 211 So.3d at 413.

Citing **Tinsley**, Karla argues in brief that the children's academic struggles and emotional issues, which are tied to their schooling, are a material change in circumstances. In **Tinsley**, this court noted that in some instances, a child's continued poor school performance over an extended period of time may constitute a change in circumstances affecting the welfare of the child. **Tinsley**, 211 So.3d at 415, n.4. Karla maintains that provisions by the school have not aided the children as they progress through the high stress academic curriculum.

Earl argues that "[s]chool is not always easy and will require students to have some trials and tribulations to matriculate through school and be successful." He maintains that both children are meeting or exceeding academic expectations and that the trial court correctly found no evidence that the current educational environment is causing harm to the children. We agree.

According to the record, at the time of the hearing, both children were enrolled in BASIS—AIG had just finished 2nd grade and AGG had just completed 5th grade. When Karla filed her motion to be designated domiciliary parent, she asserted that she and Earl were "unable to reach an agreement regarding choice of school, despite meeting with a parent coordinator in a good faith effort to resolve the same." During the hearing on the merits of this case, the trial court considered various documents, including Psychoeducational Reports prepared on both children by Dr. Georgia Shaheen, Licensed Clinical Psychologist, and AIG's 2023-2024 report card. The trial court also heard testimony from the parties, as well as a teacher previously

7

employed at BASIS who taught AGG and did in-home tutoring with AIG. Of note, AIG's report cards showed some improvement in her grades for the 2023-2024 school year. Moreover, both Karla and Earl agreed that AGG was a strong student. After considering all of the evidence, the trial court found as follows:

> [O]utside of [school choice], y'all seem to work extremely well together. I mean, sometimes it's a little rocky, but it seems like y'all are pretty good [co-parents] from everything I've seen. ... I understand, ma'am, your trepidation with the school, I get it. ... [B]ut at this time, the court's going to deny ... the motion to set domiciliary parent [and]
> I'm going to deny ... the granting of you the authority to change the [minors'] school, ma'am, the kids are going to remain in BASIS for now.

Based on our thorough review of the record, we find no abuse of discretion in the trial court's findings. The trial court had the benefit of direct observation of the parties and the difficult task of weighing the credibility of the witnesses. It is clear that although the parties may not always initially agree on what is right for the children, they have been able to work together over the years and do what is in the best interest of the children. While the parties have been unable to come to an agreement on the educational plan for the children going forward, there was no evidence establishing that the issues Karla complained about regarding no designation of a domiciliary parent as it related to the choice of school were materially affecting the children. After hearing all of the testimony and evidence, including the expert reports, the trial court implicitly found that Karla did not sufficiently establish that a change in material circumstances affecting the welfare of the children had occurred since the rendition of the consent judgment. This court has carefully considered the entire record on appeal and finds no error in the trial court's finding.[2] Each custody case must be viewed within its own peculiar set of

---

[2] Due to the delicate nature of Dr. Shaheen's findings regarding the minor children's various learning disabilities and physical health issues, and in consideration of the children's interests, we decline to go into detail about the evidence presented in the reports.

facts. See **Cedotal v. Cedotal**, 2005-1524 (La. App. 1 Cir. 11/4/05), 927 So.2d 433, 437. Because the first requirement for modifying the consent judgment was not satisfied, the inquiry ends, and there is no basis for altering the July 10, 2018, consent judgment. **Lunney**, 91 So.3d at 353.

Next, we address Karla's argument that the trial court erred in failing to issue an implementation order. Karla asserts that if no domiciliary parent is named, the trial court's failure to designate Karla with the decision-making authority for education effectively results in co-domiciliary parents, which is not allowed under Louisiana law. Earl contends that the consent judgment issued by the trial court constitutes a valid implementation order. We agree.

As previously noted, the trial court signed a consent judgment on July 10, 2018, awarding Karla and Earl joint custody of the minor children. The judgment further provided "there shall be no domiciliary designation with the decision-making authority governed in this judgment." Physical custody is a separate matter from legal authority and responsibility over a child. **Hodges**, 181 So.3d at 705. The term "custody" is usually broken down into two components: physical or actual custody and legal custody. *Id.* Once a trial court awards legal joint custody, La. R.S. 9:335 governs the details of that custodial arrangement, including physical custody, as well as the legal authority and responsibility of the parents. See **Hodges**, 181 So.3d at 703.

Louisiana Revised Statutes 9:335 provides, in pertinent part:

A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.

(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

9

(c) The implementation order shall include a provision that when either party is required to evacuate this state with a minor child because of an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority and it becomes impossible for the parties to exercise custody as provided in the judgment, the parties shall engage in continuous communication regarding the safe evacuation of the child, the location of the child during and after the emergency or disaster, and an interim custody plan for the child until the custody provisions of the judgment can be resumed.

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

The language of La. R.S. 9:335 illustrates that the paramount consideration in establishing the details of the custody arrangement, just as in the determination of whether joint custody is appropriate, is the best interest of the child. See **Aucoin v. Weaver**, 2020-0364 (La. App. 1 Cir. 11/6/20), 315 So.3d 296, 299. The trial court enjoys great procedural flexibility in crafting a custody arrangement tailored to the specific facts and circumstances of the individual case that promotes the child's best interest. **Hodges**, 181 So.3d at 709; see also La. Civ. Code art. 131. However, La. R.S. 9:335 does not require that a specific form be used for a joint custody implementation order. **Caro v. Caro**, 95-0173 (La. App. 1 Cir. 10/6/95), 671 So.2d 516, 518.

Not only does the July 10, 2018 consent judgment address the physical custody of the minor children, but it requires Karla and Earl to communicate with each other about the children's school activities, extracurricular activities, and healthcare appointments.[3] The judgment provides that both parents are entitled to participate and attend any of these events regardless of the custodial schedule. Concerning healthcare, the judgment sets forth that the parent exercising physical custody is "responsible for taking the minor children to the doctor or dentist or other appointments for illness, injury, and treatment during their respective custodial periods." The judgment further notes that the parents are in agreement with the current educational plans and will consult and mutually agree on the choice of high school for the minor children. Moreover, as set forth in the judgment, if either Karla or Earl should disagree with the agreed upon educational plan as stated in the judgment or desire to modify a primary healthcare provider, and the parties are unable to reach an agreement, they are to submit to a parenting coordinator in an attempt to reach a resolution on the issue. Based on our review of the July 10, 2018 judgment, we find that it qualifies as a valid joint custody implementation order. We find no merit to Karla's argument on appeal regarding this issue.

## CONCLUSION

For the above and foregoing reasons, we affirm the July 30, 2024 judgment of the trial court. All costs associated with this appeal are assessed against defendant/appellant, Karla Danielle Gorio.

**AFFIRMED.**

---

[3] Pursuant to La. R.S. 9:336, "[j]oint custody obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority."

11